UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROY S. G., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 3:24-cv-05436-JNW <br><br> ORDER AFFIRMING COMMISSIONER'S DECISION |

## 1.  INTRODUCTION

Plaintiff Roy S. G. seeks review of the denial of his application for supplemental social security disability benefits. He contends that the administrative law judge ("ALJ") erred in evaluating and weighing his testimony. Dkt. No. 10 at 1–2. For the reasons below, the Court DENIES the Petition for Judicial Review, Dkt. No. 3, and AFFIRMS the Commissioner's denial of benefits.

## 2.  LEGAL STANDARD

"Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not

ORDER AFFIRMING COMMISSIONER'S DECISION - 1

supported by substantial evidence." *Elizabeth G. v. Comm'r of Soc. Sec.*, Case No. C24-2025-MLP, 2025 WL 1519230, at *1 (W.D. Wash. May 27, 2025) (citing *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (cleaned up)). "In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings." *Id.* (citing *Biestek*, 587 U.S. at 102–03)).

The ALJ is responsible for resolving ambiguities in the medical evidence, and if the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Smartt*, 53 F.4th at 494 (9th Cir. 2022); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the reviewing court] may not substitute [its] judgment for that of the ALJ."). Reversal is warranted only if the ALJ erred, and the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

To determine whether a claimant is disabled, an ALJ must employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the

listings in the regulations; (4) whether, given the claimant's residual functional capacity ("RFC"), he can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. § 404.1520(a).

### 3. BACKGROUND

Plaintiff applied for benefits on June 16, 2021. After an initial denial on January 26, 2022, and subsequent administrative proceedings and hearing, the ALJ issued an unfavorable decision on September 6, 2023. AR31–51. Plaintiff then filed this petition for review. Dkt. No. 3.

Using the five-step process described above, the ALJ made the following pertinent findings of fact and conclusions of law:

- The claimant has the following severe impairments: degenerative disc disease; spondylosis; arthritis; degenerative joint disease; obesity; venous stasis; headaches; depressive disorder; anxiety disorder; and post-traumatic stress disorder (20 CFR 416.920(c)). AR36.

- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). AR 37.

- After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 416.967(b), that does not require more than occasional climbing of ladders, ropes, or scaffolds; that does not require more than frequent stooping, kneeling, crouching, crawling, or climbing of ramps or stairs; that does not require concentrated exposure to wetness, humidity, vibration, hazards, pulmonary irritants, or extreme heat; that does not require more than occasional, superficial interaction

- (such as "good morning" or "here is the item"); and that provides employer-set goals. AR39.

- The claimant has not been under a disability, as defined in the Social Security Act, since June 16, 2021, the date the application was filed (20 CFR 416.920(g)). AR46.

In reaching these conclusions, the ALJ found that the claimant had numerous relevant diagnoses constituting severe impairments, including degenerative disc disease of the lumbar spine, degenerative joint disease of both hips, and venous stasis. AR39. The ALJ further found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms to some degree." AR40. However, the ALJ discounted Plaintiff's testimony about his conditions and limitations and concluded that he could perform light work. Specifically, The ALJ discounted portions of Plaintiff's symptom testimony about his venous stasis and degenerative disc disease; he discounted Plaintiff's testimony that he must elevate his legs for 30 minutes every two hours; and he discounted Plaintiff's testimony that he has hip and back pain that impact his ability to stand or walk for an extended period of time (i.e., more than 30 minutes). AR39.

## 4. DISCUSSION

Plaintiff asserts that the ALJ erred by discounting his testimony about his symptoms and limitations. Dkt. No. 10 at 1. The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. At this step, the claimant, "need not show that her impairment could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused *some degree* of the symptom." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996) (emphasis added)); *Hornbeak v. Saul*, No. 2:18-cv-0142, 2019 WL 3996492, at *5 (E.D. Cal. Aug. 23, 2019) (quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)) (citing *Putz v. Astrue*, 371 F. App'x 801, 802–03 (9th Cir. 2010) (Claimant "need not present objective medical evidence to demonstrate the severity of her fatigue.")).

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at, 1036 (cleaned up). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quotation omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (cleaned up). "In weighing a claimant's credibility, an ALJ may consider, among other things, the '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's]

daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" *Kuhn v. O'Malley*, No. 2:22-cv-1835, 2024 WL 1095810, at *3 (E.D. Cal. March 13, 2024) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms. Because the ALJ found no evidence of malingering, the ALJ could only discount Plaintiff's testimony by offering "specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (cleaned up).

**4.1    The ALJ provided some "specific, clear and convincing" reasons for discounting Plaintiff's testimony about his symptoms and limitations.**

The ALJ gave specific, clear and convincing reasons for discounting Plaintiff's symptom testimony that are supported by substantial evidence in the record. First, in 2021, a Nurse Practitioner evaluated Plaintiff on behalf of Washington's Department of Social and Health Services. AR423. She concluded that Plaintiff could stand or walk for at least four hours. AR43. Plaintiff does not challenge the Nurse Practitioner's opinion or address it, even though it contradicts certain limitations he claims. For instance, the Nurse Practitioner's opinion contradicts Plaintiff's assertion that his hip and back pain impact his ability to stand or walk for more than 30 minutes. AR39. It also contradicts his assertion that he must sit for 30 minutes with his legs raised every two hours to avoid leg swelling.

Second, the ALJ discounted Plaintiff's testimony about his leg swelling on a finding that he is not "entirely compliant with his prescribed medical regimen," as "he does not use compression stockings on a regular basis." AR41. An ALJ may "consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed"; "if the . . . extent of the treatment . . . is not comparable with the degree of the individual's subjective complaints," the ALJ may discount the claimant's symptoms. SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (The ALJ did not err in rejecting testimony of debilitating pain "in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects.").

On review, the Court finds that this is a "specific, clear and convincing" reason for discounting Plaintiff's testimony. While Plaintiff testified that he regularly wears compression stockings, his medical records indicate that he has only worn them intermittently and that providers have repeatedly advised him to wear them over the past several years. Medical notes from 2021 indicate that he was "not using his compression stockings," *see* AR389, or at least not consistently, *see* AR398 ("He is currently not using his compression stockings[.]"). The ALJ also cites to a 2022 examination note, stating that Plaintiff reported he did not wear compression stockings. AR41; AR43. The ALJ was entitled to discount Plaintiff's symptoms testimony on this basis.

In sum, the ALJ provided some clear and convincing reasons for discounting Plaintiff's testimony about his limitations and symptoms.

**4.2    Some of the reasons the ALJ provided for discounting Plaintiff's symptom testimony are erroneous.**

The remaining reasons the ALJ provided for discounting Plaintiff's symptom testimony are legally flawed or not supported by substantial evidence.

First, the ALJ found that before Spring 2023, no medical professional had advised Plaintiff to elevate his legs as a form of treatment.[1] But Plaintiff had been hospitalized many times for cellulitis and leg ulcers with leg swelling beginning in 2020, and his treatment plans included elevating legs and wearing compression socks. *See, e.g.*, AR633. Accordingly, the ALJ's finding that no provider had recommended leg elevation and compression socks before 2023 is contrary to the record.

The Commissioner argues that the ALJ did not need to consider medical recommendations and treatment related to Plaintiff's cellulitis and leg ulcers because those conditions are distinct, acute conditions and thus irrelevant to Plaintiff's vascular issues and edema. But Plaintiff's medical records recognize that the ulcers, cellulitis, and edema are connected. Indeed, Plaintiff's chart notes from a 2020 hospitalization explain that Plaintiff was admitted for "lower leg edema and erythema wounds." AR327. Likewise, records from that hospital admission describe

---

[1] The ALJ considered this as evidence undermining Plaintiff's symptom testimony. The ALJ cites a medical provider's note from Spring 2023 to support this finding: "Swelling of bilateral lower limbs . . . Elevate legs frequently[.] Compression stockings recommended[.] Consider vascular follow up[.]" AR637.

ORDER AFFIRMING COMMISSIONER'S DECISION - 8

the wounds as "BLE [bilateral lower extremities] chronic venous insufficiency (CVI) with ulcerations and abscesses and superimposed cellulitis." AR316. One of his treaters recommended that he "[k]eep legs elevated above level of heart if able to tolerate." *Id*. The treater further "[r]ecommended outpatient wound center upon discharge for management of chronic venous insufficiency ulcerations with evaluation for compression[,] as compression therapy is the gold standard of treatment CVI [chronic venous insufficiency] disease." *Id*.

Additionally, when Plaintiff was hospitalized in 2021, his treating doctor noted his primary diagnosis as "peripheral edema," then noted diagnoses of left leg cellulitis and hypertension. AR348; *see also* AR350 (peripheral edema listed as first "Impression"; "HPI" states, "[p]atient has a history of chronic edema in the legs and recurrent cellulitis"). Moreover, the Nurse Practitioner who evaluated Plaintiff in 2021, *see above*, described Plaintiff's edema and swelling as associated with his cellulitis. AR 423. Accordingly, the ALJ's conclusion that Plaintiff had not been advised by a medical professional to elevate his legs as treatment for his vascular issues before Spring 2023 is contrary to the record and not supported by substantial evidence. He was advised to do so at least as early as 2020.

Second, the ALJ discredited Plaintiff's testimony on a finding that "[Plaintiff] has never been evaluated by a vascular surgeon, indicating his medical providers did not think his condition warranted additional evaluation or treatment." AR41. In 2023, however, Plaintiff was told to consider following up with a vascular specialist. AR637. And, while not a treating provider, the Nurse Practitioner noted that it would behoove Plaintiff to "get a vascular surgery evaluation" when she evaluated

ORDER AFFIRMING COMMISSIONER'S DECISION - 9

him in 2021. AR427. Moreover, even if Plaintiff has not been referred to a vascular surgeon, that fact does not provide a clear and convincing reason for discrediting Plaintiff's symptom testimony. *See Lingenfelter*, 504 F.3d at 1036 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.") (quoting *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998)).

Third, the ALJ found that throughout the medical records, "[o]ften no edema was observed," explaining there was an overall "lack of edema observations." AR41. But the ALJ cites only three instances in which edema was not observed. *See* AR459 and AR463 (progress notes from 5/9/2022); AR467 (progress note from 5/31/2022); and AR873 (PA-C note from 4/26/2023). Plaintiff's charts indicate that he has "chronic lymphedema in the legs" and "recurrent cellulitis." AR349 (4/10/2021 Emergency Department provider notes, "[h]e does have . . . chronic lymphedema"); AR352 (noting 2-3+ edema). And his treating providers have regularly found edema on examination since 2020. *See, e.g.*, AR288 (8/23/2020 physical examination note finding edema); AR400 (5/20/2021 Emergency Department note regarding edema); AR399 (7/19/2021 chart note documenting 3+ pitting edema, bilaterally, color changes c/w venous insufficiency"); AR427 (1/7/2022 state agency physical evaluation finding "[j]ustification for [physical] limitation is history of cellulitis with edema."); AR633 (7/16/2022 pathology report noting edema); AR645 (11/10/2022 chart note finding edema on physical examination); AR636–37 (4/25/2023 chart note regarding "Swelling/ Edema" and noting bilateral "1+ pitting edema"). Given this long record of edema findings, the ALJ's conclusion that there was an overall "lack

of edema observations" that undercut Plaintiff's symptom testimony is not supported by substantial evidence in the record.

Fourth, Plaintiff argues that the ALJ erred by concluding that his medical records are inconsistent with the "degree of limitation [that he] asserts his degenerative disc disease causes." AR40. First, the ALJ found that the 2022 x-rays of Plaintiff's spine "are inconsistent" with his subjective complaints of pain and limitation. *Id*. But those x-rays showed "moderate spondylotic changes" in the lumbar spine (L4-L5, L5-S1) with an arthropathy. AR553. The ALJ does not explain how this imaging undermines Plaintiff's testimony, and any contradiction is not apparent from the x-ray findings.

Fifth, the ALJ found that Plaintiff's examination notes contradict his testimony about the limitations he experiences due to his degenerative disc disease. AR40. The ALJ notes that Plaintiff's straight-leg raise testing "occasionally returns positive," but "this finding is not consistent" throughout the record. The fact that Plaintiff's straight-leg raise testing did not always yield a positive result does not *contradict* Plaintiff's testimony that walking and standing for long periods of time causes him back pain. *See, e.g., Smartt*, 53 F.4th at 497–98 (contradictions found when claimant stated that she used a walker, but medical records revealed that she only used a walker when attending appointments related to her disability application).

Sixth, Plaintiff argues that the ALJ erred by discrediting his symptoms testimony because he did not arrive at his medical appointments "in any acute or apparent distress." AR40. That Plaintiff was not in acute distress at his

ORDER AFFIRMING COMMISSIONER'S DECISION - 11

appointments, however, does not contradict any specific testimony that Plaintiff provided. *See id.* And again, "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *See Lingenfelter*, 504 F.3d at 1036 (quoting *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998)).

Seventh, Plaintiff argues that the ALJ erred by concluding that "[i]n the last 12 months, when [Plaintiff] went to a medical provider other than for mental health issues, his purpose was to create a record for disability purposes, rather than for treatment." AR40. To support this finding, the ALJ cites all of Exhibit 19F, rather than language from any particular medical record. Having reviewed the record, the Court concludes that the ALJ's finding is speculative and not supported by substantial evidence. And the Court reiterates that the ALJ did not find malingering.

Finally, The ALJ's finding that Plaintiff's activities of daily living ("ADLs") undermine his credibility is not supported by substantial evidence. That Plaintiff appeared well-groomed does not contradict any specific testimony that he gave, nor must one be unkempt to have a disability for purpose of social security disability benefits. The ALJ also found that Plaintiff has "reported rigorous physical activities, like carrying a television." AR42. But that is the *only* example of a "rigorous activity" cited, and it appears to have caused injuries and a trip to the hospital. Substantial evidence does not support that Plaintiff engages in ADLs that undermine any specific testimony he gave about his pain or limitations.

ORDER AFFIRMING COMMISSIONER'S DECISION - 12

**4.3    The ALJ's errors were harmless.**

Many reasons that the ALJ gave for discounting Plaintiff's testimony were erroneous. However, the ALJ's decision must be affirmed if any of the ALJ's findings are supported by substantial evidence and support the ultimate conclusion. *Batson*, 359 F.3d at 1196–97. As discussed above, the ALJ gave other, legally permissible reasons for discrediting his testimony that are supported by substantial evidence in the record. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) ("[W]e concluded that any error the ALJ committed in assuming he did was harmless . . . because the ALJ provided numerous other record-supported reasons for discrediting the claimant's testimony, which allowed our review to determine the ALJ's error did not materially impact his decision."). Thus, the Court finds that substantial evidence supports discounting Plaintiff's testimony. Accordingly, any erroneous reasons provided for discounting his testimony were harmless error.

Moreover, given the unchallenged medical evidence, substantial evidence supports the ALJ's ultimate denial of benefits. For example, Plaintiff does not challenge the opinion of the "State agency physical health consultant . . ., M.D., . . . [who] opined that [Plaintiff] retains the ability to perform light work with postural and environmental limitations." AR42. The ALJ found that the consultant's opinion was "supported by the evidence available at the time the opinion was formed and consistent with the most recent examination notes." AR43. As substantial evidence in the record supports the ALJ's decision, the Court must affirm it.

## 5.  CONCLUSION

The Court finds that substantial evidence supports the ALJ's decision. While the ALJ erred in several aspects of the credibility analysis, these errors were harmless because other valid reasons support the adverse credibility determination. Accordingly, the Court AFFIRMS the Commissioner's denial of benefits and DENIES Plaintiff's Petition for Judicial Review. Dkt. 3.

This case is DISMISSED with prejudice, and the Court directs the Clerk of the Court to ENTER judgment and CLOSE this case.

Dated this 30th day of September, 2025.

Jamal N. Whitehead
United States District Judge